**In re JOSEPH C. SPIESS COMPANY, Debtor.**

**Bankruptcy No. 91 B 27233.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 1, 1992.

Charles J. Myler, Myler, Ruddy & McTavish, Aurora, Ill., for plaintiff.

Leroy G. Inskeep, Rudnick & Wolfe, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter originates from Joseph C. Spiess Company's rejection of a non-residential realty lease with Rouse–Randhurst Shopping Center. The Court approved the rejection on March 9, 1992, but reserved ruling on the Debtor's request to authorize the rejection as of March 1, 1992. After reviewing the pleadings filed and considering the arguments of counsel, the Court hereby finds the effective rejection of a non-residential realty lease with Rouse–Randhurst Shopping Center occurred on March 1, 1992. Further, the Court denies Rouse–Randhurst Shopping Center's re-

quest to compel the Debtor's immediate payment of rental expense accrued post-petition.

## JURISDICTION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), and (O).

## FACTS and BACKGROUND

Sometime around October 1, 1986, Joseph C. Spiess Company ("Spiess" or "Debtor"), executed a lease of approximately 61,000 square feet of retail space at the Rouse–Randhurst Shopping Center, Mt. Prospect, Illinois (the "Premises") with LaSalle National Bank. Eventually, the Maryland Corporation of Rouse–Randhurst Shopping Center Inc. ("Rouse") succeeded to the interest of LaSalle National Bank. During the term of the lease, Spiess operated a retail department store at the Premises.

On December 23, 1991, Spiess filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (hereinafter referred to as the "Code"). Shortly thereafter, the Debtor held a going-out-of-business sale, ceased operations on January 31, 1992, and removed its fixtures and vacated the Premises on February 17, 1992. Pursuant to the Debtor's motion filed the next day, the Court extended until April 20, 1992, the time during which the Debtor had to assume or reject its executory contracts and leases. Less than two weeks later (February 29, 1992), the Debtor served Rouse with notice of the Debtor's intent to reject the lease of the Premises.

On March 9, 1992, the Court heard the Debtor's request to reject the lease, and granted relief of same, but reserved ruling on whether the Debtor's rejection should apply retroactively to March 1, 1992. In addition to arguing that the Debtor's rejection should not be retroactive, Rouse claimed that all rental payments accrued post-petition should be paid immediately as an administrative expense. Because this issue was not before the Court, the Court advised Rouse to file a motion requesting said relief. Rouse complied by filing a motion to compel compliance with 11 U.S.C. § 365(d)(3) which the Court heard on May 30, 1992. Both matters were thereafter taken under advisement.

## ARGUMENTS OF THE PARTIES

The present dispute concerns the rejection of an unexpired non-residential lease. The Debtor contends that its rejection of same should operate retroactively to March 1, 1992, the date the Debtor served its motion to reject. The Debtor reasons that court approval is not a condition precedent to rejection, and further contends that a lessor should not be preferred by virtue of a delay in awaiting court approval. Rouse on the other hand argues that the Debtor's rejection should not be effective until the Court approves same, and thus concludes that this Court should find the actual date of rejection to be March 9, 1992.

As a separate matter, Rouse contends that the Debtor should make immediate payment of rent accrued post-petition through the effective date of rejection. Rouse relies upon the wording of Section 365(d)(3) which requires the trustee to make timely payments of rent. The Debtor counters by arguing that nothing compels it[1] to make immediate payment of expenses accrued post-petition when the lease is rejected, but rather that it need only pay such expenses in accord with Section 507; otherwise, Rouse would receive an unintended super-priority.

## ISSUES

Thus, the Court is faced with deciding two issues: (1) whether the effective date of the Debtor's rejection is the date the Debtor served its motion to reject, the date the Court heard Debtor's motion to reject

---

**1.** Section 1107 of the Code gives a debtor-in-possession essentially all of the powers of a trustee. Any reference in this Opinion to a Chapter 11 trustee also includes a debtor-in-possession, such as Spiess.

or the date on which the Court entered its order approving said motion; and (2) whether the Debtor must immediately pay any or all of the rental expense accrued post-petition even though lease was rejected.

## DISCUSSION

Section 365 governs the duties and obligations of the trustee with regard to executory contracts and unexpired leases. Section 365(a) provides:

(a) Except as provided in section 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Section 365(d)(3) provides:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

Finally, Section 365(d)(4) provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(a), (d)(3) and (d)(4) (1988).

*Whether Section 365 compels court approval as a condition precedent to the rejection of an unexpired lease*

■ The Court finds neither the plain language of or past practice under Section 365(d), nor the policy underlying payment of an administrative expense support a finding that rejection of an unexpired nonresidential lease should be the date the court approves same. The Court's analysis begins with the plain language of Section 365(a).

*Plain language*

The U.S. Supreme Court has counseled that a court should read a statute according to its literal terms, *e.g., United States v. Locke*, 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985), unless such a reading would produce a result at odds with the Congressional intent. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The operative wording of Section 365 provides that "the trustee, *subject to the court's approval,* may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (emphasis added). Notably, nowhere does the plain language of Section 365(a) expressly require prior court authorization to assume or reject an executory contract or unexpired lease, as Rouse suggests.

■ Section 365 contemplates two distinct actions—one by the trustee and one by the court. The trustee assumes or rejects, and the court approves—nothing suggests the court authorizes. Although the Code does not specify how the trustee is to assume or reject a lease, it certainly makes clear that the trustee's actions are different from and independent of the court's. For example, Section 365(a) places the burden upon the trustee to ensure that a lease is assumed or rejected. If the trustee fails to take any action, then Section 365(d) treats the lease as rejected automatically

after the sixtieth day. If the trustee takes affirmative acts to assume or reject a lease, however, such action is subject to court review to assure any such assumption or rejection is in the best interests of the estate.[2] The plain language of Section 365(a), therefore, treats court approval not as a condition precedent to an effective assumption or rejection, but rather as a safeguard subjecting the decision of the trustee (and its business judgment) to review and possible reversal.

*Past practice*

In addition to the plain language, courts have long recognized that assumption or rejection of an unexpired lease may occur prior to court approval. Prior court construction plays an integral role in construing Code sections because "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.' " *Dewsnup v. Timm,* — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (citation omitted). Consequently, a review of pre-amendment practice provides informative interpretative assistance. *See United States v. Ron Pair Enterprises, Inc.* 489 U.S. 235, 244, 109 S.Ct. 1026, 1032, 103 L.Ed.2d 290 (1989) (the court will look to pre-Code practice for interpretative assistance).

Rejecting a lease, like assuming a lease, has been recognized as being effective on the day of notifying the lessor of such intent. Under pre-amendment Section 365(d)(1),[3] the trustee had sixty days to assume or reject an executory contract or unexpired lease. Courts construed this time limitation as applying to only the trustee's decision to assume or reject, not to the court's approval of that decision, and held that the court may act outside of sixty-day time limitation as long as the trustee has acted within the time frame. *See, e.g., In re Price Chopper Supermar-*

*kets, Inc.,* 19 B.R. 462, 466 (Bankr.S.D.Cal. 1982); *In re Avery Arnold Constr., Inc.,* 11 B.R. 34, 35 (Bankr.S.D.Fla.1981).

In *Price,* for example, the court faced the issue of when a trustee's rejection of a collective bargaining agreement occurred— the date of court approval or the date of the trustee's unilateral rejection. Noting that most unexpired leases would be rejected by the Chapter 7 trustee, the court emphasized that pre-authorization to reject would "undoubtedly create a considerable administrative burden." 19 B.R. at 466. The court reasoned that Congress recognized this burden and vested the trustee with the sole authority to assume or reject during a sixty-day time period, after which rejection was automatic. *Id.* Thus, the court concluded that "as long as the Chapter 7 trustee has acted within the sixty-day limitation imposed by Section 365(d)(1), then the court may act outside that time." *Id.*

The same treatment occurred with a trustee's assumption of an unexpired lease. In *Avery,* the trustee advised the landlord prior to the expiration of the sixty day period that he intended to assign the lease to a third party which the landlord acknowledged. 11 B.R. at 35. A hearing was held after the sixty day period and the landlord objected claiming the trustee had not obtained court approval prior to the expiration of the sixty day period. The court rejected the landlord's argument stating that "[a]lthough the court's approval is mandatory, the 'assumption' may precede 'approval' and, therefore, there is no requirement that the approval occur within the 60 day period." *Id.*

As the *Price* and *Avery* decisions demonstrate, Congress had clear direction that court approval occurring subsequent to any assumption or rejection related back to the

---

**2.** *See* discussion *infra* p. 605 explaining the import of the Code adoption of Bankruptcy Rules 6006(a) and 9014 and their treatment of the bankruptcy court's role as protector, not participant.

**3.** Section 365(d)(1) provided:
(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an exec-

utory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected. 11 U.S.C. § 365 (1976, supp. II).

date of the decision. Had Congress sought to rectify this construction, it could have easily done so when it adopted the 1984 amendments. *See In re Pullman Constr. Industries, Inc.,* 132 B.R. 359, 362 (Bankr. N.D.Ill.1991) (the meaning of a statute is illuminated by action Congress takes or chooses not to take in response to judicial interpretations to it). Congress in no way, however, expressly modified the assumption or rejection process to require court approval prior to same. Rather, present Section 365(d)(4) is virtually identical to old Section 365(d)(1). The Court is reluctant to modify what Congress silently left unchanged.

Moreover, the U.S. Supreme Court has counseled that courts should be "reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm,* —— U.S. at ——, 112 S.Ct. at 779. The adoption of Section 365(d)(4) is devoid of any legislative history discussing the need for prior court approval of the trustee's rejection of an unexpired non-residential lease. Rather, Congress intended simply to shorten the trustee's decision making process in Chapter 11 cases, not dictate court calenders in approving or disallowing such decisions.

Under the Code as it existed prior to the 1984 amendments, a Chapter 11 debtor had until confirmation of a plan or reorganization to elect to assume or reject an unexpired lease. 11 U.S.C. § 365(d)(2) (1976, supp. II). During this period, a debtor was not required to pay rent but the estate was liable for the reasonable value of the use and occupancy of the premises, *see, e.g., Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941), which was often treated as an administrative claim. *See, e.g., In re Cochise College Park, Inc.,* 703 F.2d 1339, 1354–55 (9th Cir.1983). In contrast, a trustee in a Chapter 7 case had only a flat 60 day period to assume an unexpired lease; otherwise, the lease was deemed rejected. 11 U.S.C. § 365(d)(1) (1976, supp. II).

The disparate treatment of Chapter 7 and Chapter 11 cases led to obvious inequities. The *By–Rite Distributing* court noted that:

> A trustee in a chapter 7 case had to decide within sixty days after the bankruptcy petition was filed whether or not to assume the lease. Thus, within a reasonable time the landlord of a chapter 7 debtor knew whether or not he still had a tenant and could start collecting rent again. A chapter 11 trustee, on the other hand, could wait almost indefinitely—till confirmation of the plan—to decide to assume the lease; in the meantime, the landlord was left in limbo.

*In re By–Rite Distributing, Inc.,* 55 B.R. 740, 743 (D.C.Utah 1985). If the debtor had vacated the premises, for example, the landlord could not get a new tenant because the trustee might later decide to assume the unexpired lease. This situation was especially serious in shopping center scenarios, where a vacancy in one store hurt all the other tenants because of the reduced customer traffic in the center as a whole. In fact, Congress intended to remedy the problems caused shopping centers and their solvent tenants arising from the administration of the Code, by adopting what are commonly referred to as the "shopping center bankruptcy amendments." 130 Cong.Rec. S8891, S8894 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.Code Cong. & Ad.News 576, 590, 598; *see By–Rite Distributing,* 55 B.R. at 743.

Part of those adopted amendments included Section 365(d)(4). This section includes a sixty-day time limit for *all* unexpired leases of nonresidential real property which encompasses Chapter 11. In adopting Section 365(d)(4), Congress intended to shorten the trustee's decision making process, not dictate court calendars:

> [Section 365(d)(4)] would lessen the problems caused by extended vacancies and partial operation of tenant space by requiring that the trustee decide whether to assume or reject the nonresidential real property lease within 60 days after

the order for relief in a case under any chapter.

130 Cong. Rec. S8891, S8894 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.Code Cong. & Ad. News 576, 590, 598; *see By–Rite Distributing*, 55 B.R. at 744. Although Congress extended a certain degree of protection to lessors, nothing remotely suggests that the shortened time period for a trustee's decision to be made was intended to impact upon when a court approved same. In fact, the policy reasons underlying the payment of an administrative expense contradict any rule requiring prior court approval of a trustee's rejection of an unexpired lease.

*Policy*

The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed. In adopting Section 365, Congress intended to allow the trustee to assume with court approval only those leases which would benefit the estate, and conversely to reject those leases which were unprofitable. *See In re Whitcomb & Keller Mortg. Co.*, 715 F.2d 375, 379 (7th Cir.1983) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 221 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6181) ("[S]uccessful reorganization under Chapter 11 depends on relieving the debtor of burdensome contracts and pre-petition debts so that 'additional cash flow thus freed is used to meet current operating expenses.' "). Any such rejection conveys a two-fold benefit: (1) removing an unprofitable asset; and (2) reducing administrative expenses.

■ These administrative expenses are "the actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A), and are paid as a first priority expense. 11 U.S.C. § 507(a)(1). Rental expenses incurred by the Debtor post-petition could qualify as administrative ex-

penses. *In re K–Fabricators, Inc.*, 135 B.R. 654 (Bankr.W.D.Wash.1992) (estate liable for post-petition rent as administrative expense for portion of leased premises); *See also* 11 U.S.C. § 365(d)(3) (trustee shall timely perform all obligations of the debtor notwithstanding § 503(b)(1)). By requiring Court approval as a condition precedent to the rejection of an unexpired lease, Rouse hopes to collect an administrative expense for the non-use of the premises while awaiting court approval. According to the definition of an administrative expense, however, Rouse should not recover such a priority expense because the rent accrued was not an actual, necessary cost or expense of preserving the estate.[4] Thus, the policy underlying the payment of administrative expenses justifies the retroactive approval of a trustee's rejection of an unexpired non-residential lease.

■ The statutory priorities of Sections 507 and 503 should be narrowly construed. "If one claimant is to be preferred over others, the purpose should be clear from the statute." *In re United West, Inc.*, 87 B.R. 138, 141 (Bankr.D.Nev.1988) (quoting *Trustees of Amalgamated Insurance Fund v. McFarilin's*, 789 F.2d 98 (2d Cir. 1986)). It is difficult for this Court to fathom why Congress would have intended an unwarranted windfall, like payment of rental expenses as an administrative expense when the debtor had abandoned use of same, to befall a lessor by virtue of his status. Absent something more, the Court is not persuaded that Rouse should receive as an administrative expense the rental expense accrued post-petition for the non-use of the Premises.

Consequently, the Court finds that neither the plain language of or past practice under Section 365(d), nor the policy reasons underlying payment of an administrative expense support a finding that rejection of

4. According to the Seventh Circuit, the policy underlying the provisions of section 503 is to assure priority payment of those post-petition creditors servicing the debtor; otherwise the debtor would be left with no hope of reorganization. *In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984). Thus, a claim will be afforded priori-

ty "under section 503 if the debt both (1) 'arises from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business'." *In re Jartran, Inc.*, 732 F.2d at 586 (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)).

an unexpired non-residential lease should be the date the court approves same. Rouse, however, argues that this Court should follow the reasoning of the decisions which find court approval a condition precedent to the rejection of an unexpired non-residential lease.

*Case law*

The United States Court of Appeals for the Seventh Circuit has yet to address the issue of when the rejection of an unexpired non-residential lease occurs. Those courts that have done so, however, have reached contrary results. A majority of courts appear to hold that approval is a condition precedent to effective rejection. *See, e.g., In re Four Star Pizza, Inc.,* 135 B.R. 498, 501 (Bankr.W.D.Pa.1992); *In re Federated Department Stores, Inc.,* 131 B.R. 808, 814–15 (S.D.Ohio 1991); *In re Worths Stores Corp.,* 130 B.R. 531, 533 (Bankr. E.D.Mo.1991); *In re Virginia Packaging Supply Co.,* 122 B.R. 491, 493 (Bankr. E.D.Va.1990); *In re Garfinckels, Inc.,* 118 B.R. 154, 155 (Bankr.D.C.1990); *In re Revco D.S., Inc.,* 109 B.R. 264, 269 (Bankr. N.D.Ohio 1989); *See also In re D'Lites of America, Inc.,* 86 B.R. 299, 302 (Bankr. N.D.Ga.1988); *In re National Oil Co.,* 80 B.R. 525, 526–27 (Bankr.D.Colo.1987); *In re OK Kwi Lynn Candles, Inc.,* 75 B.R. 97 (Bankr.N.D.Ohio 1987); *In re Swiss Hot Dog Co.,* 72 B.R. 569, 571 (D.Colo.1987). Conversely, a minority of courts have held that court approval is not a condition precedent to an effective rejection and that rejection may occur prior to issuance of the order approving same. *See, e.g., In re Mid Region Petroleum, Inc.,* 111 B.R. 968, 970–71 (Bankr.N.D.Okla.1990); *In re Carlisle Homes, Inc.,* 103 B.R. 524, 535–36 (Bankr. D.N.J.1988); *In re Re–Trac Corp.,* 59 B.R. 251, 255 (Bankr.D.Minn.1986); *In re 1 Po-*

*tato 2, Inc.,* 58 B.R. 752, 754–55 (Bankr. D.Minn.1986).

The *Revco* decision is the leading case from the camp which advocates court approval as a condition precedent to the rejection of an unexpired non-residential lease.[5] The *Revco* court begins its analysis by pointing to Bankruptcy Rules 6006 and 9014 as establishing Congress' intent "to strengthen the role of the court in the assumption/rejection decision making process." 109 B.R. at 268–69 (citations omitted). The *Revco* court rationalizes that this involvement treats court approval as a condition precedent to any purported rejection of an unexpired lease. Specifically, the *Revco* court notes the following:

> The differences between former Bankruptcy Rule 607 and current Bankruptcy Rules 6006(a) and 9014 evidence Congressional intent to strengthen the role of the court in the assumption/rejection decision making process.... 'Court approval' is now 'an indispensable step in the process.'

*Revco,* 109 B.R. at 268–69 (citations omitted) (footnotes omitted). Whatever the court's involvement may be, the plain language of neither rule in any way requires court authorization prior to assuming or rejecting a lease. A closer review of former Bankruptcy Rule 607 shows the flaw in the *Revco* court's assumption.

Bankruptcy Rule 607 provided that "[w]henever practicable, the trustee shall obtain approval of the court *before* he assumes a contract." R.Bankr.P. 607 (emphasis added). As the plain language states, the former rule encouraged the trustee to seek *prior* court authorization to assume a contract. Bankruptcy Rules

---

**5.** Relying upon the reasoning of *Revco* are the decisions of *In re Four Star Pizza, Inc.,* 135 B.R. 498 (Bankr.W.D.Pa.1992); *In re Federated Department Stores, Inc.,* 131 B.R. 808 (S.D.Ohio 1991); *In re Worths Stores Corp.,* 130 B.R. 531 (Bankr.E.D.Mo.1991); *In re Virginia Packaging Supply Co.,* 122 B.R. 491 (Bankr.E.D.Va.1990); *In re Garfinckels, Inc.,* 118 B.R. 154 (Bankr.D.C. 1990). Additionally, the *Revco* decision incor-

porates or further explains the reasoning put forth in the decisions of *In re D'Lites of America, Inc.,* 86 B.R. 299 (Bankr.N.D.Ga.1988); *In re National Oil Co.,* 80 B.R. 525 (Bankr.D.Colo. 1987); *In re OK Kwi Lynn Candles, Inc.,* 75 B.R. 97 (Bankr.N.D.Ohio 1987); *In re Swiss Hot Dog Co.,* 72 B.R. 569 (D.Colo.1987). Consequently, the Court will limit its discussion to the *Revco* decision.

6006(a)[6] and 9014[7] on the other hand treat court approval as merely a safeguard or precaution to assuring any assumption or rejection is in the best interests of the estate. Those rules provide, for example, that court approval is obtained only after a motion is filed and a hearing is held. This safeguard gives those objecting to the trustee's actions an opportunity to persuade the court to disallow said actions, if not in the best interests of the estate. Thus, if the trustee rejects a lease, but the court later learns that said rejection is not in the best interests of the estate, then the court can deny the trustee's rejection. Whatever the trustee may do (assume or reject), the hearing provided by Bankruptcy Rule 9014 operates to protect the estate and claimants against unilateral acts of the trustee. Thus, Bankruptcy Rules 6006 and 9014 have changed the bankruptcy court's role from participant to that of protector. This Court interprets Section 365 and Bankruptcy Rules 6006 and 9014 as diminishing the Court's involvement in the actual decision making process, and thus finds the *Revco* court's analysis unpersuasive.

The *Revco* court further reasons that the lessor will be placed in the "unfortunate position of relying on debtor to file a motion for approval of the rejection with the court and await court approval." 109 B.R. at 269. In other words, the lessor will receive no rent under the lease between the time of rejection and court approval of same which may involve an extended period of time resulting in additional loss, depending on when the trustee has scheduled the hearing of the motion.

This Court appreciates the desire to protect lessors, but there is simply no indication that Congress intended to protect lessors from all problems incident to a tenant's filing a petition in bankrupt. All creditors—including landlords—should expect some loss, delay or inconvenience.

Whatever the loss may be from the delay between a debtor's rejection and court approval of same would constitute the landlord's cost from doing business with an insolvent tenant—a cost to be borne by the landlord, not the other creditors. Nothing in the Code remotely suggests that landlords should be absolved of *all* loss from dealing with insolvent or bankrupt tenants. If the lessor truly is concerned about incurring costs due to the tenant's delay, the lessor always has the option of filing a motion requesting the debtor to assume or reject, thus bringing the issue before the court for prompt resolution.

The *Revco* court further reasons that if the trustee rejects a lease which would provide more benefit if assumed, the estate will incur a greater loss, and the court can do nothing because the effective date of rejection is the date of notification:

[I]f after notification of rejection is given, circumstances exist that indicate the lease should not have been rejected (a party is interested in purchasing the lease at a profit to the debtor's estate) the rejection would still be effective as of the date of notification. Under these circumstances the estate will suffer a loss as the lease was rejected prior to the date the offer to purchase was received.

109 B.R. at 269.

This line of reasoning, which *Rouse* expressly adopts, overlooks Bankruptcy Rules 6006 and 9014 which protect against such unilateral actions. The trustee administers the estate and is in the best position to weigh factors immediately and act in the best interests of the estate. But no matter what the trustee's actions (assumption or rejection), they are not the estate. But no matter what the trustee's actions (assumption or rejection), they are not absolute— they must meet with court approval. 11 U.S.C. § 365(a). Thus, the trustee cannot cause the estate to suffer any loss arising

---

**6.** Bankruptcy Rule 6006(a) provides:
> A proceeding to assume, reject, or assign an executory contract, or unexpired lease other than as party of a plan, is governed by Rule 9014

Fed.R.Bankr.P. 6006(a) (1988).

**7.** Bankruptcy Rule 9014 provides in pertinent part:
> In a contested matter in a case under the Code not otherwise governed by these rules,

relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, ...

Fed.R.Bankr.P. 9014 (1988).

from rejecting a profitable lease, because the court must sign-off on any such rejection. Allowing the trustee to reject a lease subject to court approval, simply allows the estate to reduce its administrative expenses, assuming the court approves the trustee's decision.

The most compelling argument for disallowing the retroactive approval of a trustee's rejection involves the certainty of any such decision. The *Revco* court explains that prior court approval is necessary because it provides certainty as to the actual date of rejection. This Court agrees that court approval under Bankruptcy Rule 9014 provides finality as to the trustee's acts, but the small time gap between notice and hearing does not disturb that certainty so as to require a different result. The Court finds that a trustee's rejection of a lease should be retroactive to the date that trustee takes affirmative steps to reject said lease such as serving notice of a motion to reject. Consequently, this Court will allow a court approved rejection of an unexpired non-residential lease to apply retroactively to the date the trustee notices the motion requesting same.

In this case the first notice was served March 1, 1992. The Court, therefore, finds that the lease was deemed rejected effective March 1, 1992.

*Whether Section 365(d)(3) compels the debtor to make immediate payment of rent accrued post-petition as an administrative expense*

In a separate motion, Rouse requests this Court to compel the Debtor to pay immediately, in full, all post-petition rent accrued through the date of rejection since the Debtor entered bankruptcy. According to Rouse, the language of Section 365(d)(3) requires the trustee to *timely* perform the Debtor's unexpired lease obligations until the lease is assumed or rejected. Rouse, therefore, concludes that it is entitled to immediate payment of all accrued post-petition rent, which the Debtor has neglected to pay. The Debtor on the other hand argues that Rouse attempts to isolate Section 365(d)(3) to avoid the application of Section 507(a)(1)[8] which specifies the priorities afforded claims against the estate. According to the Debtor, Rouse's claim should share *pro rata* with all other Section 507 administrative expenses allowed under Section 503(b).[9] As this Court previously explained, the rejection of Rouse's lease occurred on the day the Debtor served its motion to reject. Thus, the issue of payment of post-petition obligations runs from the petition date through and including February 29, 1992.

As earlier mentioned, Congress intended to afford lessors some additional protections not afforded others. The lessor to whom Section 365(d)(3) applies is uniquely situated because the lessor becomes necessarily involved both in the debtor's reorganization (since the lease is an asset of the estate) as well as the debtor's ongoing business (since the debtor controls the lessor's property while deciding whether to assume or reject the lease). *In re CSVA, Inc.*, 140 B.R. 116, 120 (Bankr.W.D.N.C.1992). Unlike utilities,[10] trade creditors, or post-petition employees,[11] the lessor cannot utilize

**8.** Section 507 provides in pertinent part that:
(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title ...
11 U.S.C. § 507(a)(1) (1988).

**9.** Section 503 provides in relevant part that:
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)(A) the actual, necessary costs and expenses of preserving the estate ...
11 U.S.C. 503(b)(1) (1988).

**10.** *See* Section 366(b), which permits a utility to "alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such a date."

**11.** "There are no reported opinions concerning immediate payment of business expenses, but *Collier* states,
While the courts deal gingerly with the payment of professionals, there is a virtually unstated assumption that 'ordinary course of business' administrative expenses (such as current post-petition wages and trade debt)

self-help remedies and terminate its relationship with the debtor if payment is not forthcoming.[12]

■ In many bankruptcy cases, *when* a claim is paid makes the difference as to whether it will be paid at all. *In re Virginia Packaging Supply Co.*, 122 B.R. 491, 495 (Bankr.E.D.Va.1990). Consequently, the benefits afforded the lessor under Section 365(d) are numerous. Unlike the practice under the Act, the trustee is obligated to perform all obligations regardless of the "reasonable value" afforded the estate. Additionally, the trustee can make these payments without prior court approval. Finally, and most importantly, any such payment obligations are elevated to priority status regardless of the benefit conferred upon the estate. For example, Section 503(b)(1) defines administrative expenses as those actual, necessary expenses and costs of preserving the estate, and Section 507 provides the exclusive list of priorities in bankruptcy. Section 365(d)(3) provides that the "trustee shall *timely* perform all the obligations of the debtor ... until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3) (emphasis added). By waiving the application of Section 503(b)(1),

· Congress expressly elevated what may have been a general unsecured claim to one of priority under Section 507(a)(1).

■ Rouse, however, urges the Court to elevate its claim even higher, which raises some interesting priority issues. If, for example, this Court permits immediate full payment to Rouse without considering the estate's possible administrative insolvency, then creditors with administrative claims of equal priority under Section 507(a)(1) may receive a dividend smaller than that awarded to the lessor. Permitting such payment in essence gives the lessor "super-priority" status by elevating the lessor ahead of other administrative creditors. Recognizing such status operates to the detriment of other administrative creditors by precluding recovery of these funds in the event the estate becomes administratively insolvent. *In re Cardinal Industries, Inc.*, 109 B.R. 738, 741 (Bankr.S.D.Ohio 1989) ("[I]f such claim has a super-priority status, payments may not be recoverable if the estate has insufficient funds to pay all administrative expense claims.").

Several number of courts have approved of such "super-priority" status for Section 365(d)(3) obligations.[13] A large number of

will be paid when due. The courts have not dealt with the question of whether these funds must be refunded if, later, there remains insufficient money for other administrative expenses." 3 *Collier on Bankruptcy* 15th ed. ¶ 503.01

*In re Pacific Forest Industries, Inc.*, 95 B.R. 740, 743 (Bankr.C.D.Cal.1989).

12. The legislative history to Section 365(d)(3) also echoes Congress concern over the lessor's involuntary status.

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Sen. Hatch). *See also In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 n. 2 (Bankr.E.D.Pa.1987) (a nonresidential lessor is like an involuntary extender of unsecured credit).

13. *See, e.g., In re Lunn*, 129 B.R. 476, 477 (Bankr.N.D.Ohio 1991) (framing the issue solely in terms of Section 365(d)(3) and detriment to the lessor); *In re Narragansett Clothing Co.*, 119 B.R. 388, 391 (Bankr.D.R.I.1990) (in view of the prior court orders to pay rent timely, trustee cannot use Section 503(1)(A) to circumvent payment under Section 365(d)(3) to diligent lessor aggressively pursuing its rights); *In re Rare Coin Galleries, Inc.*, 72 B.R. 415, 416 (D.Mass. 1987) (Section 365(d)(3) gives special administrative claim priority even if other such claims cannot be paid in full); *In re M.H.I., Inc.*, 61 B.R. 69 (Bankr.D.Md.1986) (unequivocal statutory language of Section 365(d)(3) requires immediate payment); *In re Barrister of Delaware, Ltd.*, 49 B.R. 446 (Bankr.D.Del.1985) (trustee must make immediate payment since no subsection under Section 365 excepts it); *see also In re ABC Books & School Supplies*, 121 B.R. 329, 331 (Bankr.S.D.Ohio 1990) (recognizing detriment

cases, however, requires the lessor to stand in line with other Section 507(a)(1) claimants.[14] Those courts recognizing super-priority status have relied upon the wording of Section 365(d)(3) requiring the trustee to *"timely* perform all the obligations of the debtor." (emphasis added). This language in no way, however, expressly elevates these post-petition obligations to super-priority status. Only Section 364 contains any such language. That section, for example, provides that a trustee may obtain credit or incur debt "with *priority* over any or all administrative expenses of the kind specified in section 503(b)." 11 U.S.C. § 364(c)(1) (emphasis added). Thus, Congress expressly provided "super-priority" for a lender in certain situations. Had Congress intended such "super-priority" status for an already elevated general unsecured claim, it could have easily done so. In light of the already numerous advantages conferred to lessors, this Court will not alter the priority of payment without an express mandate from Congress.

## CONCLUSION

Based upon the foregoing reasons, the Court finds the Debtor rejected its lease with Rouse on the date it filed its motion to reject same, and not the date the Court approved same. The Court further denies

Rouse's request to receive payment of rent accrued post-petition immediately.

to lessor, but unnecessary to decide super-priority of Section 365(d)(3) since solvent estate could pay all administrative claims).

14. *See, e.g., In re CSVA, Inc.,* 140 B.R. 116, 121 (Bankr.W.D.N.C.1992) (Section 365(d)(3) specifies a required payment but does not create any super-priority therefor); *In re Virginia Packaging Supply Co.,* 122 B.R. 491, 495 (Bankr.E.D.Va. 1990) (lessors not entitled to super-priority under Section 365(d)(3)); *In re Wingspread Corp.,* 116 B.R. 915, 932 (Bankr.S.D.N.Y.1990); *In re Buyer's Club Markets, Inc.,* 115 B.R. 700 (Bankr. D.Colo.1990); *In re Cardinal Industries, Inc.,* 109 B.R. 738, 742 (Bankr.S.D Ohio 1989) ("[A] debtor's limited resources are to be equally distributed among all creditors with the same priority."); *In re Orvco, Inc.,* 95 B.R. 724, 727 (9th Cir.BAP 1989) ("[A] bankruptcy court has the discretion to order the immediate surrender of the leased premises if a debtor fails to make the required payments."); *In re Granada, Inc.,* 88 B.R. 369, 374 (Bankr.D.Utah 1988) (other remedies exist other than requiring *immediate* payment if trustee/debtor fails to comply with the obli-

gations of Section 365(d)(3)); [*In re United West, Inc.,* 87 B.R. 138, 140–41 (Bankr.D.Nev. 1988) (Section 503(b)(1) deals only with the procedural predicate to the payment of an administrative claim and has no effect over the timing of payment of Section 365(d)(3) claims);] *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973 (Bankr.E.D.Pa.1987) (no penalty exists for failure to comply with Section 365(d)(3) to justify immediate payment); *In re Tandem Group, Inc.,* 61 B.R. 738, 742 (Bankr. C.D.Cal.1986) (if Congress had intended to create a super-priority for Section 365(d)(3), it would have done so by express statutory language); *In re Westview 74th Street Drug Corp.,* 59 B.R. 747, 754–55 (Bankr.S.D.N.Y.1986) (some protection of the landlord, rather than improvement of position is the key to an understanding of the aims of Section 365); *In re IML Freight, Inc.,* 52 B.R. 124, 139 (Bankr.D.Utah 1985) (court does not favor payment of administrative expenses subject to repayment of part of such sums received if there are sufficient funds to pay other claimants).