**In re AT HOME CORPORATION, a Delaware Corporation, et al., Debtors.**

**Pacific Shores Development, LLC, Appellant,**

**v.**

**At Home Corporation, Appellee.**

**No. C–02–0045 VRW.**
**Bankruptcy No. 01–32495–TC.**

United States District Court, N.D. California.

March 26, 2003.

Ivan M. Gold, Brobeck, Phleger & Harrison, Nicholas B. Waranoff, William W. Huckins, Allen, Matkins, Leck, Gamble & Mallory, San Francisco, CA, for appellant.

Austin K. Barron, Brian M. Metcalf, Robert J. White, Suzzanne Uhland, Victoria Graff, O'Melveny Myers LLP, Los Angeles, CA, for appellee.

Margaret McGee, San Francisco, CA, Office of the United States Trustee, pro se.

Thomas E. Carlson, U.S. Bankruptcy Court for the Northern District of California, San Francisco, CA, pro se.

## ORDER

WALKER, District Judge.

Appellant Pacific Shores Development, LLC, appeals the decision of the bankruptcy court below, which ordered debtor and appellee At Home Corporation's leases with appellant rejected effective nunc pro tunc to the date appellee filed its rejection motion. For the reasons detailed herein, the court AFFIRMS the decision below.

## I

In February 2000, At Home leased two office buildings located in Redwood City

from Pacific Shores. At the time, At Home anticipated that the nonresidential lease space would help accommodate its growth needs. At Home suffered a severe downturn in business, however, and on September 28, 2001, At Home sought Chapter 11 bankruptcy protection. See App (Doc # 12) at 4.

The same day, At Home moved under 11 USC § 365(a) to reject unexpired nonresidential real property leases, including its leases with Pacific Shores for buildings it had never occupied. *Id.* at 1–16. Notice of the motion was provided to Pacific Shores the same day. *Id.* at 148. The emergency motion sought rejection to apply retroactively to the date of filing. *Id.* at 1–16.

At Home's first day emergency motions hearing was held on October 1, 2001. *Id.* at 30. At that hearing, Judge Carlson set the emergency motion concerning rejection of nonresidential leases to be heard on October 9, 2001. *Id.* at 77–78. During this time, At Home did not deliver a formal surrender notice to Pacific Shores. *Id.* at 134. On October 4, 2001, Pacific Shores filed a limited objection; it did not oppose lease rejection but moved to prevent retroactive application. *Id.* at 91–100.

At the October 9, 2001, bankruptcy hearing, At Home explained that its decision not to provide formal surrender notice was meant as a precautionary measure to prevent Pacific Shores from claiming over $1,000,000 held in a construction escrow account as a result of default. *Id.* at 134, 140–41. Moreover, At Home reiterated that it did not occupy the premises in question because construction had not yet been completed; hence, the rent Pacific Shores would have received under the lease would have forced At Home and its shareholders and creditors to pay significant sums for which they had received no commensurate benefit. *Id.* at 137. Final-

ly, At Home contended that its rejection motion provided ample notice to Pacific Shores, as of the date the notice was filed, that At Home intended to reject the leases in question and that Pacific Shores suffered no loss of interest from the absence of formal notice of surrender during the time until the motion was heard. *Id.* at 139–40, 148.

In opposition, Pacific Shores contended that section 365 does not allow bankruptcy courts to exercise their equitable powers to allow rejection to apply retroactively prior to the date of court approval or prior to the time of formal surrender. Furthermore, because At Home had not provided a formal notice of surrender and was still legally in possession of the premises, Pacific Shores could not re-let the premises to another tenant. In addition, according to Pacific Shores, "[d]ebtor must bear the burden of the small delay associated with rejecting the leases." *Id.* at 93.

The bankruptcy court determined that this was "a close question" but ultimately sided with At Home and exercised its equitable powers to order that rejection of the leases be applied retroactively to September 28, 2001, the date of filing, rather than October 9, 2001. Ruling from the bench, the court below explained:

[O]n reviewing the *Thinking Machines* case and interpreting these facts as best I can, I believe this is a case where a nunc pro tunc order is appropriate under * * * the equitable relief section of *Thinking Machines.*

And I so determine because of the following facts and circumstances. First, I note that the Debtor moved immediately * * * to reject the lease * * *. I note, second, that the Debtor set this matter for hearing promptly. It wasn't perfect. It wasn't done absolutely as soon as possible, but it was done without any delay. There was a [court]

holiday in here. * * * There was neither any deliberate use of a long notice period to keep their options open nor in fact as I can see it any indifference to the timing concerns of the landlord. This is virtually as soon as possible in this particular case.

Third, I note that the Debtor is not in possession of the premises. I think that is a factor that makes it easier for the landlord to re-let and also has some effect on interpreting what the Debtor did. And last, I note that the landlord's opposition was to any nunc pro tunc effect generally without any suggestion here that this process should be speeded up so that they could get—the landlord could get its indefeasible right to re-let the premises more quickly.

I'm going to grant the relief requested by Debtor here because I am convinced that the opposition to this relief is motivated by the landlord's interest in running the administrative rent, and it is not motivated by a—primarily by a concern to get this indisputable right to start re-letting the premises as quickly as possible.

App (Doc # 12) at 153–54.

In addition to the arguments raised at the bankruptcy court hearing, Pacific Shores argues that the court below clearly erred in finding that At Home was not in "possession" of the lease premises because it had not formally surrendered the premises. *Id.* at 8.

## II

As a preliminary matter, the court considers At Home's late-filed motions to strike portions of its own brief as well as portions of Pacific Shores's reply brief and to oppose Pacific Shores's Request for Judicial Notice. See Doc # 19. Pacific Shores opposes these requests. See Doc # 21.

Bankruptcy LR 9013–1(e) provides that, except for relevant judicial opinions published after the date the opposition or reply was filed, "once a reply is filed, no additional memoranda, papers or letters shall be filed without prior Court approval." Here, At Home's motion to strike was filed on October 23, 2002, more than five months after Pacific Shores's reply was filed. See Appellant Repl Br (Doc # 14) (filed May 17, 2002). At Home did not seek or obtain court approval for its extraneous filing. Accordingly, the court disregards At Home's motion to strike.

Pacific Shores, in connection with its reply brief, requests judicial notice of two documents: a memorandum concerning one of the leases at issue and excerpts of a transcript of a 1998 hearing in the Bankruptcy Court for the District of Delaware, in which the presiding judge presented his views on circumstances that warrant retroactive relief for nonresidential lease rejection. The court takes judicial notice of the transcript, as part of the public record, but declines to take judicial notice of the memorandum concerning the lease terms as unnecessary.

In its opening brief, At Home had argued in a footnote that because the leases at issue "state that their 'erms would have commenced as of the date that (1) the Premises were actually occupied by the Debtors or (2) a certificate of occupancy was issued for the Premises, it is questionable whether the Debtors were even entitled to possess * * * the Premises." Appellee Br (Doc # 11) at 5 n2. As Pacific Shores points out, however, it is clear that At Home did not raise this argument before the bankruptcy court and, accordingly, that the bankruptcy court did not consider it. See Appellant Repl Br (Doc # 14), at 6. Hence, judicial notice of this document is unnecessary.

### III

■ Under section 365(a), a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" upon approval of the court. 11 USC § 365(a). Bankruptcy courts generally approve rejection if the debtor demonstrates that the rejection will benefit the estate under a "business judgment" test. See *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir.1989).

Pacific Shores does not attack the bankruptcy court's decision to approve rejection. It appeals only from the portion of the bankruptcy court's order allowing rejection nunc pro tunc to the original date of the rejection motion's filing.

■ Pacific Shores contends that the bankruptcy court erred in two respects: first by allowing retroactive application of rejection in the absence of formal surrender, and second by abusing its discretion in finding that At Home was entitled to such equitable relief. The first contention raises a question of law which this court reviews de novo. See *In re Lazar*, 83 F.3d 306, 308 (9th Cir.1996). The second issue, a bankruptcy court's exercise of discretion concerning a request for retroactive relief, is reviewed for abuse of discretion. *In re Thinking Machines Corp.*, 67 F.3d 1021, 1028 (1st Cir.1995). "An abuse of discretion occurs if the district court does not apply the correct law or rests its decision on a clearly erroneous finding of fact." *Foster v. Skinner*, 70 F.3d 1084, 1087 (9th Cir.1995).

### A

The court first considers de novo the question whether bankruptcy courts may exercise discretion to order rejection of leases retroactively under section 365 if the debtor has not formally surrendered the premises.

Section 365 of the Bankruptcy Code provides in pertinent part:

(a) * * * [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

*   *   *   *   *   *

(d) * * * (3) The trustee shall timely perform all the obligations of the debtor * * * arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. * * *

(4) * * * [I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected * * *.

11 USC § 365.

■ The statute on its face does not specifically address whether the bankruptcy court may order rejection to be applied retroactively or whether formal surrender is a condition precedent to rejection thereunder. But by its plain language, the initial decision to assume or reject an executory contract lies with the trustee. See also *In re Arizona Appetito's Stores, Inc.*, 893 F.2d at 219 ("The trustee is to assume or to reject, and the court is to approve or disapprove."). "[U]ntil such lease is assumed or rejected," the trustee's obligations thereunder continue to accrue. 11 USC § 365(d)(3). The Ninth Circuit has explained that because the trustee's decision is subject to court approval, "rejection of an unexpired lease can be accomplished only by an order of a bankruptcy court."

893 F.2d at 219. Nothing in the statute, however, suggests that for purposes of section 365(d)(3), rejection cannot be ordered retroactively to the date the successful rejection motion was filed. Nor does the statute condition accomplishment of rejection on prior formal surrender.

Pacific Shores relies primarily on *In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 219 (9th Cir.1990), *In re Cukierman*, 265 F.3d 846 (9th Cir.2001), and *In re Pacific–Atlantic Trading Co.*, 27 F.3d 401 (9th Cir.1994), to support its view that formal surrender is required for rejection under section 365.

None of these cases, however, address the precise issue at bar: whether a bankruptcy court, upon a successful motion to reject an unexpired lease, may order that rejection to be effective as of the motion filing date, notwithstanding the debtor's failure to surrender formally the premises. Cf. *In re Thinking Machines Corp.*, 67 F.3d, 1021, 1028 n. 4 (1st Cir.1995) (noting that Ninth Circuit has not addressed the issue).

Unlike the case at bar, in *In re Cukierman*, 265 F.3d at 846, the debtor sought to *assume* the lease under section 365, but the bankruptcy court denied the motion, thereby effectively rejecting the lease. *Id.* at 848. The Ninth Circuit held that, under that circumstance, the landlord was entitled to administrative rent until the date the lease was effectively rejected. Likewise, in *In re Pacific–Atlantic Trading Co.*, 27 F.3d at 401–02, the trustee failed timely to take any formal cognizable action regarding the lease at issue and, accordingly, it was deemed effectively rejected upon the passage of 60 days. Hence, these cases do not address whether a debtor's successful motion to reject a lease may be given retroactive effect to the date the motion was filed or whether formal surrender is required for such retroactive effect.

The circumstances of *In re Arizona Appetito's Stores, Inc.* are even farther afield. In that case, the debtor attempted to argue that it could, after the statutorily prescribed sixty-day period, reverse course and assume the lease in question. The Ninth Circuit rejected that argument and held that "a lease is deemed rejected with the passage of the sixty-day period, where, as here, the trustee has filed a motion for rejection." 893 F.2d at 219. That case also dealt with the operation of the sixty-day period in which debtors may move to reject a nonresidential lease.

Pacific Shores contends that no court has ordered a lease rejection retroactive to a date prior to the date on which the landlord was restored to legal possession. But this is not true. See *In re Thinking Machines Corp.*, 67 F.3d at 1023 (landlord moved for immediate possession of premises approximately six weeks after motion to reject lease); *In re New Valley Corporation*, 2000 WL 1251858, at *5, *15 (D.N.J. 2000) (retroactive application of rejection to three months prior to the formal date of surrender). Cf. *In re Joseph C. Spiess*, 145 B.R. 597, 599 (Bankr.N.D.Ill.1992) (noting debtor vacated premises but without mention of formal surrender).

While Pacific Shores argues that At Home was required to surrender the premises upon filing the rejection motion, it fails to cite any authority to that effect. The focus of section 365(d) is on rejection, which is accomplished by way of motion and court approval, not on formal surrender. See *In re Arizona Appetito's Stores, Inc.*, 893 F.2d at 219; 11 USC § 365(d)(1)–(4) (treating rejection as distinct from formal surrender). The cases cited by Pacific Shores discuss surrender as a factor which may weigh in the bankruptcy court's equitable decision to order retroactive relief, but none of them discusses the issue as a distinct legal question or precludes the

relief at issue here. See *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D.La.2000); *In re New Valley Corp.*, 2000 WL 1251858 at *15 (noting that landlord's effective control over premises was one factor used in weighing the equities); *In re Amber's Stores, Inc.*, 193 B.R. 819 (Bankr.N.D.Tex.1996) (relying on *In re Thinking Machines* to conclude that "nothing precludes a bankruptcy court, based on the equities of the case, from approving the trustee's rejection of a non-residential real property lease retroactively to an earlier date"); *In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y.1995) (section 365 "does not state that rejection cannot be applied retroactively, or that there are restrictions as to the manner in which the court can approve rejection"); *In re Joseph Spiess*, 145 B.R. at 606 (not addressing surrender issue but instead concluding that "a trustee's rejection of a lease should be retroactive to the date that trustee takes affirmative steps to reject such lease such as serving notice of a motion to reject"). Instead, the absence of formal surrender would appear from the cases recited to be more properly conceptualized as a factor to be considered by a bankruptcy court in weighing the equities of retroactive relief.

Furthermore, notwithstanding the absence of formal surrender, retroactive relief to the motion filing date does not conflict with the purpose of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Those amendments, which Senator Hatch referred to as the "Shopping Center Bankruptcy Amendments," added the pertinent paragraphs of subsection (d), in order to prevent delay on the part of debtors in choosing whether to assume or reject a nonresidential lease:

> Congress became concerned about the practical consequences of Chapter 11 filings by tenants of shopping centers. It

was particularly concerned that mall operators were facing periods of extended vacancies, that would last until such time as the bankruptcy courts would finally decide to take the initiative and force debtors to make a choice whether to assume or reject the leases.

*In re Arizona Appetito's Stores, Inc.*, 893 F.2d at 220 (quoting *In re Southwest Aircraft Serv.*, 831 F.2d 848, 849 (9th Cir. 1987)).

As Senator Hatch explained at the time of enactment, these provisions were meant to prevent trustees from failing to "mak[e] payments due under the lease" "during the time the debtor * * * ha[d] not yet decided whether to assume or reject the lease * * *." 1984 USCCAN at 599. Hence, the legislative history indicates that Congress intended to prevent trustees from profiting from their own indecision and delay in rejecting a lease at the expense of landlords. Nothing contained therein suggests that Congress intended to foreclose the action taken by the bankruptcy court below. In light of the plain language and structure of the statute, as well as its legislative history, the court declines to find that the bankruptcy court erred in ordering retroactive relief in the absence of formal surrender.

Unlike the appeal at bar, the landlords in *Cukierman* and *Pacific–Atlantic Trading Co* did not have effective notice that the debtors did not intend to assume the leases in question. As a result, requiring payment of administrative rent furthered the "intent of Congress to secure for lessors the full amount of rent due during the 60–day period *while the trustee determines to accept or reject the lease * * *.*" *In re Pacific–Atlantic Trading Co.*, 27 F.3d at 405. Here, however, it is undisputed that At Home provided such notice on the very day it filed for bankruptcy protection.

The bankruptcy court below relied on *In re Thinking Machines Corp.*, in which the First Circuit held that "a bankruptcy court, when principles of equity so dictate, may approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date." 67 F.3d at 1028. The First Circuit reasoned that "[r]etroactive approval orders do not contradict § 365(a)(3)" because "[w]hile that provision commands the trustee to pay rent at the contract rate until a nonresidential lease is rejected, it does not stipulate that a rejection cannot be made to apply retroactively." *Id.* at 1028. As Pacific Shores points out, First Circuit precedent is not binding on these proceedings, but the court nevertheless finds the First Circuit's reasoning persuasive in this context.

■■■ Bankruptcy courts have long possessed the power to exercise equitable powers to further the purposes and goals of the Bankruptcy Code. See *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Bankruptcy courts are "essentially courts of equity, and their proceedings are inherently proceedings in equity." *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939); see also 11 USC § 105(a) (authorizing bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code). "[P]articularly in the Chapter 11 context, they may sometimes abandon mechanical solutions in favor of the pliant reins of fairness." *In re Thinking Machines Corp.*, 67 F.3d at 1028.

"While [section 365(d)(3) ] commands the trustee to pay rent at the contract rate until a nonresidential lease is rejected, it does not stipulate that a rejection cannot be made to apply retroactively." *Id.* at 1028 n. 7. Furthermore, "[t]he fact that

the bankruptcy court has the power to approve the trustee's rejection of an unexpired nonresidential lease retroactive to the motion filing date has a salutary effect" by "act[ing] as a stimulus to all parties to cooperate in getting the trustee's motion to reject heard and determined at the earliest practicable date." *Id.* By creating an incentive for trustees to determine whether to accept or reject a lease at the earliest possible date, retroactive application of rejection to the date of the motion filing in may promote the goal of the 1984 amendments to the Bankruptcy Code. As discussed, the precise time at which formal surrender was accomplished, if at all prior to the court order, is but one factor the court may consider in ordering retroactive relief.

Pacific Shores argues that it should not have to bear the cost of the inevitable delay between the time At Home filed its motion and the time the motion was granted by the bankruptcy court. But "[a]ll creditors—including landlords—should expect some loss, delay or inconvenience. Whatever the loss may be from the delay between a debtor's rejection and court approval of same would constitute the landlord's cost from doing business with an insolvent tenant—a cost to be borne by the landlord, not the other creditors." *In re Joseph C. Spiess*, 145 B.R. at 605.

In light of the importance of a bankruptcy court's equitable powers to further the goals and objectives of the Bankruptcy Code and the absence of authority removing such equitable discretion in the context of nonresidential lease rejection, the court is unwilling to hold that a bankruptcy court may not provide retroactive relief, in appropriate circumstances, under section 365 to the motion filing date despite the absence of a formal notice of surrender.

## B

Alternatively, Pacific Shores contends that the bankruptcy court abused its discretion by relying on a clearly erroneous factual finding that At Home was not in possession of the premises.

Strangely, despite the parties' agreement that no formal surrender notice had been provided, the bankruptcy court noted that "Debtor is not in possession of the premises." App (Doc # 12) at 153. Appellant conjectures that if the bankruptcy court was not referring to legal possession of the premises, which may be surrendered only by formal notice, it was referring instead to the fact that At Home did not occupy the premises. The court agrees with Pacific Shores's alternative explanation and concludes that the bankruptcy court was referring to the fact that At Home did not occupy the premises since construction was still ongoing for the buildings in question. See *id.* at 153 (noting that this was "a factor that makes it easier for the landlord to re-let and also has some effect on interpreting what the Debtor did").

■ But even assuming arguendo that the court below erred in finding that At Home was not in legal possession of the premises, as previously explained, a surrender of legal possession is not required under section 365. Moreover, the existence of other equitable factors, as discussed below, is sufficient for the court to conclude that the bankruptcy court did not abuse its discretion.

■ Despite At Home's failure to supply a formal notice of surrender, its intention to reject the Pacific Shores leases on the date it filed for bankruptcy protection was unequivocal. The bankruptcy court also found that Pacific Shores did not contend that it was harmed in any way by the lack of formal surrender; Pacific Shores did not deny that At Home did not occupy the premises, which were still being built out, or that it was in fact prevented from re-letting the premises to another tenant in the meantime. Accordingly, it was not clearly erroneous for the bankruptcy court to find that Pacific Shores sought to receive a windfall by opposing the retroactive application of a rejection order and that retroactive application was appropriate in the absence of a formal surrender.

Pacific Shores further argues that the bankruptcy court erred in considering several improper factors, such as "the amount of monthly rent, the speed with which [At Home] acted" and whether Pacific Shores suggested speeding up the process. It was not error, however, for the bankruptcy court to consider these factors in determining whether to exercise its equitable powers. The monetary impact on both At Home and Pacific Shores is relevant to determine the balance of equities. Similarly, the speed with which each party acted is also a relevant factor. Finally, while Pacific Shores was under no express legal obligation to act affirmatively with respect to At Home's rejection motion, the court, acting in equity, was nevertheless entitled to take into account its actions during the eleven-day period to ascertain the potential impact of its decision on the parties.

The authorities cited by Pacific Shores concern the rent to which landlords are entitled until such time as the leases are rejected. It is true that for purposes of calculating administrative expenses under section 503(b)(1), the fair value of nonresidential leaseholds is irrelevant; in that circumstance, the contract rate governs. See *In re Cukierman*, 265 F.3d at 850 (discussing § 365(d)(3) and 503(b)(1)). But these provisions do not preclude consideration of the amount of rent that would be due in determining whether the balance of equities weighs in favor of retroactive application of rejection. Only if the debtor

has failed to reject a nonresidential lease pursuant to section 365(d)(3) does the contract rate apply.

The record before the bankruptcy court indicated that (1) At Home moved immediately to notify Pacific Shores that it wished to reject the leases; (2) At Home moved for a prompt hearing on its motion; (3) At Home did not occupy the premises because construction had not yet been completed and (4) Pacific Shores did not ask for formal surrender prior to the hearing and did not contend that it in fact was prevented from re-letting the premises. Based on these factors, the bankruptcy court concluded that Pacific Shores was concerned more with receiving a substantial amount of administrative rent than with obtaining the right to re-let the premises. App (Doc # 12) at 143, 146, 149.

The role of this court is not to reweigh the evidence but solely to determine whether the bankruptcy court's factual findings were clearly erroneous and whether it abused its discretion in ordering retroactive rejection of At Home's nonresidential leases with Pacific Shores. Upon review of the record, the court is not left with a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Carraher,* 971 F.2d 327, 328 (9th Cir.1992). Accordingly, the decision of the bankruptcy court below is AFFIRMED.

### IV

In sum, the court AFFIRMS the decision of the bankruptcy court below. The clerk is directed to close the file and terminate any pending motions.

IT IS SO ORDERED.