**In re CARDIAN MORTGAGE CORPORATION, Debtor.**

**Bankruptcy No. 89–00202–RT.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

March 18, 1991.

See also 122 B.R. 255.

Dennis Lewandowski, Kaufman & Canoles, P.C., Norfolk, Va., for debtor.

C. Thomas Green, III, Hirschler, Fleischer, Wienberg, Cox & Allen, Richmond, Va., for HBH Property Co.

William H. Schwarzschild, III, Williams, Mullens, Christian & Dobbin, P.C., Richmond, Va., for Rowe Development Co.

Mary E. Harkins, Office of the U.S. Trustee, Richmond, Va.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The debtor, Cardian Mortgage Corporation, objects to claims filed in its chapter 11 case by Rowe Development Co. and HBH Property Co. A hearing was held on each of the objections. After consideration of the arguments of counsel the court denies the debtor's objections to the claims.

*Facts*

The facts are not at issue. Cardian filed a chapter 11 petition on January 30, 1989, and since then has operated as debtor in possession. On September 5, 1990, Cardian filed an objection to a claim (no. 26) filed by HBH as an administrative priority rent claim in the amount of $7,497.98; on September 7, 1990, Cardian objected to a similar claim (no. 15) of Rowe for administrative priority in the amount of $6,813.23.

Cardian was the lessee of nonresidential property from both claimants. The parties agreed at oral argument that Cardian did not occupy either property at any time after the filing of the chapter 11 petition. The Rowe lease was rejected by consent order on April 13, 1989, following a motion to compel assumption or rejection. The court approved Cardian's rejection of HBH's lease on May 1, 1989. Both creditors seek administrative priority treatment of obligations arising under their leases.

### Discussion and Conclusions

Section 365(d)(3) provides that the trustee, in this case the debtor in possession, must timely perform all post-petition obligations under a lease of nonresidential property until it is assumed or rejected.[1] This court has already ruled in another case that obligations arising under a lease of nonresidential property after the petition is filed but before rejection of the lease are governed by the terms of the lease and are not subject to the requirements under 11 U.S.C. § 503(b) that the obligations be "actual [and] necessary costs and expenses of preserving the estate." *In re Virginia Packaging Supply Co.*, 122 B.R. 491, 494 (Bankr.E.D.Va.1990). *Virginia Packaging* also ruled that § 363(d)(3) obligations are entitled to priority under § 507(a).

Cardian maintains that since it was not in possession of either property after the filing of the petition the claims should not be given administrative priority. Cardian seeks to distinguish *Virginia Packaging* by pointing out that the debtor in that case held possession of 20 to 80 percent of the premises post-petition, while in this case Cardian had abandoned the properties prior to filing. The court rejects Cardian's position.

There is a conflict among the cases concerning whether § 363(d)(3) obligations should be imposed where there is little or no possession. *Compare In re TDC Development Corp.*, 73 B.R. 135 (Bankr.N.D. Tex.1987) (administrative claim allowed for rent for full period between filing and automatic rejection even though premises were only occupied for 6 days); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879 (Bankr.E.D.N.Y.1986) (debtor obligated to pay base monthly rental despite actual use of only 10% of premises); and *In re M.H.I., Inc.*, 61 B.R. 69 (Bankr.D.Md.1986) (payment of post-petition rent ordered where debtor never occupied the premises); *with In re Tammey Jewels, Inc.*, 116 B.R. 292, 294 (Bankr.M.D.Fla.1990) ("The 1984 amendments have not changed the necessity for showing the reasonableness of the rent or any of the other factors considered under § 503(b)(1)(A)"); and *In re Patella*, 102 B.R. 223, 226 (Bankr.D.N.M.1989) ("If the lease is rejected without any payment to the lessor, then § 365(d)(3) does not do away with the necessity of proving an administrative expense under § 503(b)(1)(A).").

At first glance it may seem unfair and contrary to the bankruptcy policy of maximization of the estate's value to impose liability for abandoned leaseholds. The lessor, however, is in the unique position among bankruptcy creditors of being forced to extend credit by allowing the use of its property during the period after the commencement of the case but before formal rejection of the lease with the possibility of getting little or no compensation in return if it is rejected.[2] The distinction between lessors and other creditors becomes more apparent upon consideration that the land likely continues to accrue mortgage, tax, maintenance, insurance, and

---

1. The pertinent text of § 365(d)(3) is as follows: The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.
11 U.S.C. § 365(d)(3) (1990).

2. Section 365(g) provides, in general, that rejection of the lease is treated as a breach occurring immediately before the date of the filing of the petition.

other obligations that the lessor must still pay.

Congress addressed this issue within the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984), by enacting what is commonly referred to as the "shopping center amendments." The often cited legislative history confirms the court's analysis:

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong.Rec. S 8891, 8894–95 (daily ed. June 29, 1984) (comments of Sen. Hatch), *reprinted in* 1984 U.S.Cong. & Admin. News 590, 599.

Thus in § 365(d)(3) Congress provided for a claim under the lease that runs until rejection of the lease. Rejection is accomplished only upon formal court approval or expiration of the time period under

§ 364(d)(4). *Virginia Packaging*, 122 B.R. at 493.

Section 365(d)(3) imposes upon the debtor an economic incentive promptly to decide whether to assume or reject the lease. The longer it waits the more it will owe. Without the rule the debtor would be in a better position to tie up the use of property even if it was abandoned or to compel the lessor to bargain away its pre- and post-petition claims in return for prompt rejection. *See* J. Battershall, *Commercial Leases and Section 365 of the Bankruptcy Code*, 64 Am.Bankr.L.J. 329, 331–32 (Fall 1990). The lessor would not be in a position to mitigate its losses by reletting the premises without the risk of the court not approving the rejection. *See Revco D.S., Inc.*, 109 B.R. 264, 269 (Bankr.N.D. Ohio 1989). True, the lessor may have the remedy of seeking to compel assumption or rejection, but it is clear that Congress has placed the burden of seeking timely assumption or rejection on the debtor by imposing full liability under the terms of the lease.

Therefore this court rules that the obligations imposed by § 365(d)(3) prior to rejection are not contingent upon any occupancy of the property; rather, they depend only on the existence of an unexpired nonresidential property lease. *In re TDC Development Corp.*, 73 B.R. 135; *In re M.H.I., Inc.*, 61 B.R. 69.

Cardian has cited *In re Destron, Inc.*, 40 B.R. 927 (Bankr.N.D.Ill.1984), and *In re Merchants Storage Co. of Virginia*, 15 B.R. 448 (Bankr.E.D.Va.1981), for the proposition that actual occupancy by the debtor is necessary. However, both of these cases pre-date the 1984 amendments and do not control today's analysis.[3]

Accordingly Cardian's objection to the claims of HBH and Rowe Development will be denied.

The court will enter a separate order.

---

**3.** *Destron* was decided on July 27, 1984. The 1984 amendment to § 365(d) took effect 90 days after July 10, 1984. Bankruptcy Amendments

and Federal Judgeship Act of 1984, Pub.L. 98–353, § 553(a), 98 Stat. 333, 392 (1984).