**In re JAMESWAY CORPORATION,**
Debtor.

**CONSTANT LIMITED PARTNERSHIP,**
Appellant,

v.

**JAMESWAY CORPORATION, Appellee.**

No. 94 Civ. 6823 (PKL).

United States District Court,
S.D. New York.

March 15, 1995.

Gordon, Feinblatt, Rothman, Hoffberger & Hollander (John Martin Klein, of counsel), Baltimore, MD, for appellant.

Weil, Gotschal & Manges (Deryck A. Palmer, of counsel), New York City, for appellee.

## OPINION AND ORDER

LEISURE, District Judge:

This is an appeal brought by Constant Limited Partnership ("Landlord") of an order, dated June 20, 1994 (the "Order"), by James L. Garrity, Jr., Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Order authorized the appellee, Jamesway Corporation ("Debtor") to reject its lease, dated July 27, 1987 (the "Lease"), with Landlord. The Order fixed June 2, 1994 as the rejection date. Appellant

contends that the rejection date should not have been assigned retroactively.

Jurisdiction of the instant appeal is founded on 28 U.S.C. § 158(a) (1988), and is undisputed.

For the reasons stated below, the appeal is denied.

## BACKGROUND

There is no dispute as to the basic facts giving rise to this appeal, but there is disagreement as to the standard of review which should be applied by this Court. Pursuant to the terms of the Lease, B.G. Properties, Inc. leased Debtor approximately 61,420 square feet of retail space located at 3430 Emmorton Road in Abington, Maryland (the "Premises"). *See* Brief of Appellee, Jamesway Corporation ("Appellee Mem.") at 5. By an assignment of lease, dated April 22, 1988, B.G. Properties, Inc. assigned all of its right, title, and interest in and to the Lease to Landlord. *See* Appeal from U.S. Bankruptcy Court, Southern District of New York— Chapter 11 Case No. 93 B 43697 (JLG) ("Appellant Mem.") at 5.[1]

On July 19, 1993, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. By order of the Bankruptcy Court, dated September 17, 1993, Debtor's time to assume or reject its unexpired leases of nonresidential real property, pursuant to 11 U.S.C. § 365(d)(4) ("§ 365(d)(4)"), was extended until the confirmation date of Debtor's plan of reorganization, with certain exceptions. Appellee Mem. at 6. By further order of the Bankruptcy Court, dated January 11, 1994, Debtor was authorized to commence store closing sales at a number of its stores, including the Premises. *Id.*

On May 19, 1994, Debtor filed a motion, pursuant to § 365 of the Bankruptcy Code, seeking an order authorizing the rejection of the Lease as of April 30, 1994. Objections to the motion were to be received no later than June 2, 1994, and on or about May 31, 1994, Landlord filed its objection to the motion.

Appellee Mem. at 6–8. The Bankruptcy Court held a hearing on June 8 and 9, 1994. The Bankruptcy Court denied Debtor's request to make rejection effective *nunc pro tunc* to April 30, 1994. Appellant Mem. at 7. The Bankruptcy Court, however, also ruled that because it could have authorized the rejection of the Lease on June 2, 1994, the Lease should be deemed rejected as of that date. *Id.* at 9. On June 22, 1994, the Bankruptcy Court entered the Order, dated June 20, 1994, which gives rise to the instant appeal. *Id.* The Order states that the Lease was deemed rejected as of June 2, 1994. *Id.*

## DISCUSSION

### I. *Standard of Review*

The question before this Court is whether the Bankruptcy Court erred in making the rejection of the Lease retroactive to June 2, 1994, a date prior to the date when the Order, approving the rejection, was entered by the Bankruptcy Court. As a preliminary matter, this Court must determine the standard of review to be applied in assessing the Bankruptcy Court's action.

Appellant contends that the question is one of law because the relevant concern is the Bankruptcy Court's interpretation of a statute. Appellant notes that questions involving purely legal considerations are considered to be conclusions of law subject to *de novo* review. It maintains that, as a matter of law, rejection of the Lease could not be retroactive to a date prior to the date the Bankruptcy Court entered the Order. Appellant concludes that this Court should use a *de novo* standard of review.

Appellee characterizes appellant's argument as asserting that, under the circumstances of the instant case, the Bankruptcy Court should not have authorized the rejection to occur prior to the entry of the Order. Appellee maintains that this argument, rather than disputing the Bankruptcy Court's legal conclusions, contests the propriety of the Bankruptcy Court's discretion in making the rejection effective as of June 2, 1994.

---

1. Appellee's brief indicates that the date of the assignment was April 22, 1994, Appellee Mem. at 5, but this is not the date on the assignment of

lease. *See* Exhibits to Brief of Appellee, Jamesway Corporation at ex. C.

Appellee concludes that review of such matters is subject to the abuse of discretion standard.

■ This Court finds that the standard for review is, preliminarily, *de novo*. The Court must first ascertain whether, as a matter of law, the Bankruptcy Court has the power to authorize the rejection to occur prior to the entry of the Order. If the Bankruptcy Court has such power, then this Court must next determine whether the Bankruptcy Court should have authorized the rejection as it did. This second question concerns the propriety of the Bankruptcy Court's decision to make the rejection effective as of June 2, 1994, and consequently is subject to the abuse of discretion standard.

## II. *The Order*

### A. *De Novo Review of the Order*

Section 365(a) of the Bankruptcy Code provides that the debtor-in-possession "subject to the Court's approval, may assume or reject any ... unexpired lease of the debtor."[2] Section 365(d)(3) provides that the debtor-in-possession[3] "shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, *until such lease is assumed or rejected*." (emphasis added).

■ Thus, the conflict is clear. Until the Lease is rejected, the Debtor must continue to perform its obligations. *See, Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust,* 148 B.R. 307, 309 (S.D.Ind.1992) (rejecting party must timely perform all obligations of the debtor, including payment of rent, until the lease is effectively rejected). The earlier the Lease is rejected, the fewer obligations the Debtor need fulfil. Appellant contends that because § 365 requires court approval of the rejection of an unexpired lease and Fed. R.Bankr.P. 6006(a) makes motions to reject an unexpired lease subject to notice and reasonable opportunity for a hearing, the effective date upon which an unexpired lease should be considered rejected is the date that the Bankruptcy Court enters an order authorizing its rejection. In sum, appellant argues that, as a matter of law, the effective date of rejection is the date that the court enters an order authorizing rejection of the lease.

If this were not the case, contends Landlord, then creditors would be put in an untenable position. Debtors could stop fulfilling their obligations at whatever point deemed appropriate by the court, but creditors could not seek an alternative disposition for the property until they had the assurances provided by formal court action. Landlord claims that allowing rejection to be effective as of a date prior to entry of a court order would result in a detriment to all concerned. Landlord maintains that a bright line rule requiring entry of an order on the court's docket approving rejection is the only sound rule.[4]

Debtor, in turn, contends that, absent an objection from Landlord, the Bankruptcy Court was scheduled to enter an order on June 2, 1994 granting Debtor's motion for authority to reject the Lease. The only reason the order was not entered on June 2, 1994, maintains Debtor, was because Land-

---

2. The parties do not dispute, in the instant action, that the Lease is an unexpired lease within the meaning of the Bankruptcy Code.

3. Sections 365(a) and 365(d)(3) actually refer to a "trustee," but the term "trustee," in this instance, also refers to the debtor-in-possession.

4. Appellant also notes that, in the instant action, the Bankruptcy Court determined that rejection should be deemed authorized as of the day after the last day that objections to rejection could have been submitted. Appellant argues that although approval of rejection is discretionary, under the Bankruptcy Court's reasoning, parties

seeking to acquire property held pursuant to an unexpired lease could begin entering into transactions as of the day following the last day for filing objections to a motion to reject. The Bankruptcy Court, however, made no such broad ruling. It merely found that, given the facts of the instant action, rejection would have been and should have been authorized as of the day after the last day for objections. The Bankruptcy Court did not find that rejection does not require court approval or that it occurs automatically if no objections are filed. Parties gambling on court authorization based only on the absence of objections do so at their own risk.

lord filed an objection to the motion.[5] Debtor argues that in ultimately making the rejection effective as of June 2, 1994, the Bankruptcy Court relied on the fact that Landlord's objection did not actually contest Debtor's right to reject the Lease, but rather concerned only the timing of rejection.[6] Debtor argues that if Landlord is rewarded, through the extension of the period in which Debtor is required to fulfil its obligations, for having made its putative objection, then creditors will have an incentive to bring meritless objections. Debtor claims that such an incentive will result in increased litigation and in other inefficiencies designed to delay court approval of a debtor's rejection of its unexpired lease, thereby extending the debtor's obligations under that lease. Debtor urges this Court not to adopt a rule that would reward landlords for delaying rejection rather than encouraging the amicable resolution of such matters.

This Court cannot conclude, from the language of § 365(a), that, as a matter of law, the Bankruptcy Court is absolutely prohibited from selecting a retroactive date for the effective date of rejection of the Lease. Section 365 merely states that rejection of an unexpired lease is subject to court approval. It does not state that rejection cannot be applied retroactively, or that there are restrictions as to the manner in which the court can approve rejection.

There has been a split of authority on a different, but related, issue that is worth briefly exploring. The related issue is whether the effective date of rejection for purposes of § 365(d)(3) is the date of the bankruptcy court's order approving rejection or the date that the debtor gives notice to the landlord of its rejection.[7] The majority of courts faced with this issue have held that the effective date of rejection is the date of the bankruptcy court's order approving re-

jection, and that court approval is a condition precedent to effective rejection. *See, e.g., Paul Harris Stores,* 148 B.R. at 309; *In re Federated Dep't Stores, Inc.,* 131 B.R. 808, 815–16 (S.D.Ohio 1991); *In re Appliance Store, Inc.,* 148 B.R. 234, 239 (Bankr.W.D.Pa. 1992); *In re Four Star Pizza, Inc.,* 135 B.R. 498, 501 (Bankr.W.D.Pa.1992); *In re Garfinckels, Inc.,* 118 B.R. 154 (Bankr.D.D.C. 1990); *In re Worths Stores Corp.,* 130 B.R. 531 (Bankr.E.D.Mo.1991); *In re Revco D.S., Inc.,* 109 B.R. 264 (Bankr.N.D.Ohio 1989); *In re National Oil Co.,* 80 B.R. 525, 526 (Bankr. D.Colo.1987). The minority view is that rejection is effective when the landlord receives unequivocal notice of the debtor's intent to reject, and that rejection may occur prior to issuance of the order approving rejection. *See, e.g., In re Mid Region Petroleum, Inc.,* 111 B.R. 968 (Bankr.N.D.Okla.1990); *In re 1 Potato 2, Inc.,* 58 B.R. 752 (Bankr.D.Minn. 1986); *In re Joseph C. Spiess Co.,* 145 B.R. 597 (Bankr.N.D.Ill.1992); *In re Carlisle Homes, Inc.,* 103 B.R. 524, 535–36 (Bankr. D.N.J.1988); *In re Re–Trac Corp.,* 59 B.R. 251, 255 (Bankr.D.Minn.1986).

The reasoning applied to resolve the issue discussed in the above cases is useful in approaching the issue in the instant action. This Court finds that the instant situation is one in which the Bankruptcy Court has the ability to give rejection retroactive effect. The weight of authority concerning § 365(a) states that the burden of court delay in reaching a decision should fall on the party seeking relief. *See In re Federated Department Stores,* 131 B.R. at 815 ("[a]s a general rule, the party seeking relief in any court must bear the risk that the court may not reach a decision as quickly as the party expected or desired"). In *Federated,* the court saw "no reason for departing from the general rule." *Federated,* 131 B.R. at 815.

**5.** "It was only the pendency of the objection which led us to contact the parties and arrange for a hearing on the matter. We disagree with the [L]andlord that on the facts of this case, that the Debtor should bear the cost associated with the added time in resolving this issue." Transcript of the June 8 and 9, 1994 Hearing ("Tr.") at 207.

**6.** "Here, there has been no challenge to Debtor's right to reject the Lease. The only contest relates to the timing of the rejection and the damages available to the [L]andlord." Tr. at 207.

**7.** The related issue differs from the instant matter because it involves the question of whether notice of rejection can be sufficient to reject a lease prior to any court involvement whatsoever.

■ In the instant action, however, there is a reason to depart from the general rule. In *Federated,* the landlord "had no more control over the delay in the issuance of the bankruptcy court's decision than did the debtors." *Federated,* 131 B.R. at 815. The *Federated* court specifically rejected the argument that the landlord caused the delay by opposing the motion to reject. *Id.* The *Federated* court concluded that there was therefore no reason to force the landlord to pay for the delay, and that the landlord should not be penalized for exercising its right to oppose the rejection. *Id.* If, however, the landlord did have more control over the delay in the court's decision than did the debtor and had caused the delay, then there is an implication in *Federated* that the landlord should be required to pay for the delay.

In the instant action, Landlord caused the delay in the Bankruptcy Court's decision. *See* Tr. at 207. The Bankruptcy Court found that, if there had been no objections, it would have authorized rejection on June 2, 1994, the day after the last day for objections. This Court does not find the Bankruptcy Court's finding of fact to be clearly erroneous. The Bankruptcy Court further found that Landlord's purported objection was only as to the timing of rejection and not as to whether rejection was an unsound business decision. Consequently, the Bankruptcy Court determined that Landlord's objection was not a proper objection. This Court does not disagree with the Bankruptcy Court's decision.[8]

Accordingly, the Landlord occasioned the delay in the Bankruptcy Court's ruling on the rejection issue. If such a delay is allowed to accrue to the benefit of Landlord, then other creditors will have an incentive to delay decisions, by whatever method possible, in order to expand the time before rejection receives court approval. By so doing, creditors will increase the period to which § 365(d)(3) applies and during which the debtor must continue to satisfy its obligations to the creditor. This Court will not create the perverse incentives and moral hazard

that necessarily result from requiring bankruptcy courts to allow landlords to benefit from frivolous objections.

The Court notes that it reaches its decision without determining whether, absent a landlord's responsibility for delay, a bankruptcy court is permitted to retroactively apply rejection. The Court observes, however, that its decision is supported by the minority view that a bankruptcy court need not even approve a rejection for such rejection to be effective. *See, e.g., In re Mid Region Petroleum,* 111 B.R. at 968; *In re 1 Potato 2,* 58 B.R. at 752; *In re Joseph C. Spiess,* 145 B.R. at 597. If such is the case then, *a fortiori,* the Bankruptcy Court can retroactively authorize rejection. But, even if the minority view is incorrect, the Bankruptcy Court can still find that rejection is effective as of the day that it would have permitted rejection, absent a frivolous objection from the party that stands to gain from delay.

In addition to finding that debtors should bear the risk of delay in court proceedings for matters which they brought to the court's attention, the majority view provides other reasons for requiring court approval prior to rejection becoming effective. These additional reasons reinforce this Court's decision in the instant matter. For example, some of the courts supporting the majority position do so, in part, because they believe that there was a Congressional intent to strengthen the role of the court in the rejection decision-making process. *See Revco,* 109 B.R. at 268–69; *Paul Harris Stores,* 148 B.R. at 310; *In re Swiss Hot Dog Company,* 72 B.R. 569, 573 (D.Colo.1987). While such a strengthening of the role of the court may support the position that there can be no rejection absent court approval, it also favors a finding that a court can, where appropriate, approve rejection retroactively.

Another risk cited by the majority in denying rejection prior to court approval, is that a lessor may relet a premises prior to court approval and will therefore face the risk that the court may not ultimately approve the rejection. Obviously, that is not a concern in

---

8. The Court notes that the instant situation is therefore different from the one facing the Court in *Federated,* where the court found that landlord

should not be penalized for a *proper,* even if ultimately unavailing, objection.

a case such as the instant one, where the Bankruptcy Court approved the rejection, but did so retroactively. Similarly, there is no concern about a debtor unilaterally deciding when rejection is effective. *See, e.g., In re Swiss Hot Dog Company,* 72 B.R. at 573.

In sum, although the instant decision reduces the certainty of the actual date of rejection, it does so only at the expense of specific landlords. The particular landlords which are adversely affected are those, which through their own improper actions, occasioned the delay which creates the uncertainty. While it is unsettled whether a bankruptcy court can authorize retroactive rejection without a strong reason,[9] it can do so to avoid penalizing the debtor for an unnecessary delay caused by the creditor.

B. *Review of the Order Under the Abuse of Discretion Standard*

■■■ In reviewing the Bankruptcy Court's order under the abuse of discretion standard, the scope of review is narrow. This Court does not look to what it would have done under the same circumstances, but to whether, in light of the record as a whole, the Bankruptcy Court's decision was reasonable. *See Crysen/Montenay Energy Co. v. E & C Trading (In re Crysen/Montenay Energy Co.),* 166 B.R. 546, 550 (S.D.N.Y.1994). For the reasons stated above, this Court concludes that the Bankruptcy Court did not abuse its discretion in determining that rejection should be effective as of June 2, 1994, the date it would have entered the order approving the rejection had Landlord not submitted its purported objection.[10] Nor can this Court conclude that the Bankruptcy Court abused its discretion in deciding that Landlord's objection only contested the timing of the rejection and did not contest, as an

unsound business decision, Debtor's decision to reject the Lease.

In sum, although this Court cannot speculate as to what the Bankruptcy Court would have done in the absence of Landlord's putative objection, it need not do so. This Court cannot conclude that the Bankruptcy Court abused its discretion in determining that, absent an objection, it would have authorized rejection as of the last day for filing objections to the rejection of the Lease, and that such date should be when rejection was effective.

Accordingly, the Court finds that, in the circumstances of the instant case, the Bankruptcy Court did not abuse its discretion in determining that rejection should be effective as of June 2, 1994, a date 20 days prior to the filing of the Bankruptcy Court's written order and seven days earlier than the Bankruptcy Court oral order.

**CONCLUSION**

For the reasons stated above, appellant's appeal for an order reversing the decision of the Bankruptcy Court is denied, and the opinion of the Bankruptcy Court is affirmed in its entirety. Accordingly, Debtor's rejection of the Lease is effective as of June 2, 1994.

**SO ORDERED.**

---

9. Doing so might violate the purpose of § 365(d)(3) of the Bankruptcy Code, the section that requires debtors to timely perform all of their obligations until a lease is rejected.

10. Moreover, even if this Court had not so concluded, the Bankruptcy Court would not have abused its discretion had it found June 9, 1994 as the date for rejection. On that date, the Bankruptcy Court ruled, on the record, that the rejection of the Lease should be deemed effective as of June 2, 1994. Therefore, as of June 9, 1994, the

Bankruptcy Court, at a minimum, approved the rejection of the Lease as of that date. Section 365, even if it precludes retroactive application of Court approval, nowhere rigidly mandates that Court approval is ineffective until formally filed. A Bankruptcy Court ruling, on the record, suffices. *See In re Garfinckels,* 118 B.R. at 154 (finding that court approval was granted as of the date the court rendered its oral decision approving rejection, which was prior to the date the written order was filed).